Basil P. Fthenakis, Esq. (88399)
CRITERION LAW
2225 E. Bayshore Road, Suite 200
Palo Alto, California 94303
Tel. (650) 352-8400
Fax. (650) 352-8408
bpf@criterionlaw.com

Of counsel:

David S. Godkin
James E. Kruzer
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

Attorneys for Plaintiff,
SIX4THREE, LLC, a Delaware
limited liability company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIX4THREE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>MEDIA TEMPLE INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:16-cv-06716-JCS<br><br>DECLARATION OF THEODORE KRAMER IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER |

I, Theodore Kramer, declare:

1. I am the Principal of Six4Three, LLC ("643") in the above-captioned action.

2. I submit this Declaration in satisfaction of Civil L.R. 7-2 and 7-5.

3. On 11 November 2016, Facebook sent a Notice of Trademark Infringement to 643. In its Notice, Facebook claims 643's registration and use of the website FacebooksAppEconomy.com (the "Site") violates the Lanham Act and infringes upon and dilutes the Facebook trademark. The Notice requests 643 remove the Site or Facebook "will have no choice but to pursue all available remedies against [643]". See 643 First Amended Complaint, at 4 and Exhibit A.

4. On 21 November 2016, 643 filed a Complaint for Declaratory Judgment and Injunctive Relief and Demand for Jury Trial (Case 3:16-cv-06716) ("Complaint").

5. On 20 December 2016, Media Temple, the hosting provider of the Site, sent notice that it would suspend the Site within 24 hours based on a complaint lodged by Facebook. See First Amended Complaint, at 4 and Exhibit B.

6. On 21 December, 643 amended its Complaint to include Media Temple as Defendant ("First Amended Complaint") and filed its Motion and all required supporting materials for a Temporary Restraining Order and preliminary injunctive relief to prevent Defendants Facebook and Media Temple from shutting down, suspending or otherwise impacting the operation of the Site.

7. Plaintiff 643 is an image recognition software company that has alleged it was harmed by Defendant Facebook's unfair and deceptive business practices. 643 invested in software that can automatically search and organize photos based on their contents in order to provide a more advanced photo sharing service for Facebook's users. For years, Facebook promised

Developers like 643 access to Facebook user photos so long as the user and their friends permitted Developers' applications to access them. On April 30, 2014, Facebook removed Developer access to Facebook user photos. As a result, Facebook became the only company that could intelligently search and sort Facebook user photos. 643 was forced to shut down its initial application and lost its investment of time, capital and labor in building its initial application. Many other small businesses were similarly impacted by Facebook's decision to monopolize this market.

8. In April 2015, 643 filed a complaint in the Superior Court of California, County of San Mateo ("Ongoing Litigation"). In June 2016, the Court denied Facebook's demurrer as to four causes of action promulgated by 643, including a cause of action under California's Unfair Competition Law (UCL) and scheduled the matter for trial in Spring 2017. 643 proposed that Facebook implement a series of policy changes as part of a settlement proposal to promote fairness and competition in Facebook's application economy. Facebook refused to discuss these measures with 643. In an effort to raise awareness of this important issue of anti-competitive behavior in application ecosystems, 643 notified Facebook of the Site, including its intention to engage the developer community around this issue to garner support for its proposal.

9. The Site is a gripe site and is entirely non-commercial in nature. The domain of the Site, FacebooksAppEconomy.com, does not communicate any intent to sell any good or service.

10. The main navigation of the Site includes a "thumbs-down" image and the words "Our Demands" and "Join Litigation". The primary content above the fold on the site is a call to action to Facebook Developers to join an effort to increase awareness among lawmakers and regulators, like the Federal Trade Commission, of the importance of this issue to small businesses and consumers. Users of the Site can send a letter to the Federal Trade Commission (FTC) and California Attorney General. Further, users can watch a documentary video

recounting the history of Facebook Platform, including Facebook's "bait and switch" behavior that has harmed thousands of businesses, people and families.

11. The Site does not offer any good or service for sale, has no ability to take payment information, and does not include or display any advertisements. 643 has no intention of selling the domain or the Site. 643 is not profiting and will not profit from the Site as it has no commercial purpose whatsoever and this lack of commercial purpose is evident prior to even entering the Site.

12. Rather, the Site addresses a matter of great public interest. It is estimated that Facebook's application ecosystem produced $227 billion of economic activity and supported 4.5 million jobs in 2014 alone.[1] This application ecosystem currently operates in the absence of regulation. Facebook sets the rules of the game and is also one of its largest players. Facebook has taken advantage of this fact to effectuate large transfers of wealth from small businesses and consumers to itself by engaging in a series of "bait and switch" tactics that violate Section 5 of the Federal Trade Commission Act (FTCA) and California's Unfair Competition Law (UCL). Application ecosystems, or App Economies, are new and innovative industries critical to the global economy as a whole.

13. Upon information and belief, Facebook sent its Notice of Trademark Infringement to 643 with full knowledge of the intended purpose of the Site, a purpose that is both non-commercial in nature and of great importance to the business and legal communities. Facebook knew of this intended purpose because 643 communicated it to Facebook on a number of occasions in advance of, during and after a court-mandated mediation on 8 November 2016. As

---

[1] See: "New Deloitte Report Looks at Facebook's Impact on Global Economy, Jobs," 20 January 2015, at http://newsroom.fb.com/news/2015/01/new-deloitte-report-looks-at-facebooks-impact-on-global-economy-jobs/.

such, Facebook's Notice was designed to create a "chilling effect" intended to suppress 643's free speech and activities in furtherance of a matter of great importance to the public.

14. 643 will suffer immediate and irreparable harm upon the shut down or suspension of the Site. 643 has invested substantial resources of time and money in developing the site and the related content, including custom-made documentary videos totaling over 35 minutes. The purpose of this investment of time and money is for 643 to help raise awareness of the harm caused by a lack of regulation in application economies, to identify other businesses who have suffered such harm, and to generate a movement to fight against this injustice that has caused a massive transfer of wealth from small businesses and the families they support to Facebook. If the Site were to be shut down even for any period of time, Plaintiff's substantial investment would be irreparably harmed as various stakeholders who have taken interest in Plaintiff's efforts are currently reviewing and sharing the Site with their advisors and stakeholders.

15. 643 has not profited from the Site or domain in any way. 643 has made no attempt to profit from the Site or the domain and has no intention of transferring or selling the Site or domain now or in the future.

16. I declare the foregoing to be true and correct as of the date listed immediately below.

DATED: December 21, 2016

By: _____
Theodore Kramer
Six4Three, LLC

EXHIBIT A

# FWD: facebooksappeconomy.com - Notice of Facebook Trademark Infringement [facebooksappeconomy.com@domainsbyproxy.com] (FROM: enforcement@mm-facebook.com)

To Whom It May Concern,

We are writing concerning your registration and use of the domain name facebooksappeconomy.com, which contains the famous Facebook trademark.

As you undoubtedly know, Facebook is the leading online social network service. Facebook adopted the name and trademark Facebook in February 2004 and, since that time, Facebook has actively used the Facebook name and trademark in connection with its online social network service, including maintaining the web site www.Facebook.com. The term Facebook is one of the most famous trademarks on the Internet. Facebook owns exclusive trademark rights to the Facebook name as a result of numerous trademark registrations in the United States and internationally, as well as related common law rights. Accordingly, Facebook enjoys broad trademark rights in its name.

Facebook has made a substantial investment in developing and providing its services. As a result of Facebook's pioneering efforts and devoting substantial effort and resources to providing only high quality services, the Facebook name and trademarks are widely known among the consuming public worldwide, and the name and trademarks embody substantial and valuable goodwill.

Accordingly, we were concerned when we learned of your registration and use of facebooksappeconomy.com. As we hope you can appreciate, protection of its trademarks is very important to Facebook. Your registration and use of facebooksappeconomy.com violates the Lanham Act (15 U.S.C. 1051 et seq.) because it infringes and dilutes the famous Facebook trademark.

Infringement occurs when a third party's use of a company's trademark (or a confusingly similar variation thereof) is likely to confuse consumers as to the affiliation, sponsorship or endorsement of the third party's services. Trademark dilution occurs when a third party's use of a variation of a company's trademark is likely to lessen the distinctiveness of the company's famous trademark.

We have filed several proceedings before the United Nation's World Intellectual Property Organization's arbitration panel. Facebook has prevailed in each case and the domain names at issue were all ordered to be transferred to Facebook. Facebook is concerned that your unauthorized use of the Facebook name may cause confusion as to whether you or your company's activities are authorized, endorsed or sponsored by Facebook when, in fact, they are not.

We understand that you may have registered facebooksappeconomy.com without full knowledge of the law in this area. However, Facebook is concerned about your use of the Facebook trademark in your domain name. As you may know, the Anticybersquatting Consumer Protection Act provides for serious penalties (up to $100,000 per domain name) against persons who, without authorization, use, sell, or offer for sale a domain name that infringes another's trademark.

While Facebook respects your right of expression and your desire to conduct business on the Internet, Facebook must enforce its own rights in order to protect its valuable and famous trademark. For these reasons, and to avoid consumer confusion, Facebook must insist that you immediately stop using facebooksappeconomy.com and disable any site available at that address. You should not sell, offer to sell, or transfer the domain name to a third party and should let the domain registration expire.

Please confirm in writing that you will agree to resolve this matter as requested. If we do not receive confirmation from you that you will comply with our request, we will have no choice but to pursue all available remedies against you.

Sincerely,

Ethel

EXHIBIT B

PLEASE READ THE FOLLOWING NOTICE CAREFULLY AND IN ITS ENTIRETY

We have received an infringement complaint regarding material found on a website you are hosting on Media Temple's systems. In accordance with our policies on such matters, we are notifying you about the complaint, your obligations, and the action we intend to take if you do not act on this notice. Please take some time to read through this notice very carefully.

WHAT IS A TRADEMARK? WHAT IS A SERVICE MARK?
As established by the United States Patent and Trademark Office (USPTO), a "trademark" is a word, phrase, symbol or design, or combination of words, phrases, symbols or designs, that identifies and distinguishes the source of the goods of one party from those of others. Per the USPTO, a "service mark" is the same as a trademark, except that it identifies and distinguishes the source of a service rather than a product.

WHAT IS TRADEMARK/SERVICE MARK INFRINGEMENT?
Generally, trademark/service mark infringement occurs when a registered logo, name, phrase, graphic, and/or other device is used without the authorization of the mark's owner. Consequently, consumers may believe that the products, services and/or information provided by the unauthorized user originates from, is endorsed by, or is affiliated with the mark owner in some way. For more information on U.S. trademark law, please visit the USPTO's website here: http://www.uspto.gov/

WHY DOES THIS MATTER TO MEDIA TEMPLE?
Upon being put on notice of the alleged infringement, a Service Provider is thenceforth deemed to have full awareness of the allegedly infringing activity occurring on its systems, and, any failure to act beyond that point exposes the Service Provider to potential liability for secondary infringement. For this, and many other reasons, many U.S. based Service Providers promptly act to suspend access to the contested material and/or website upon confirming that the complaining party has, in the Service Provider's judgment, raised a reasonably plausible claim. To view our policy on this, please see: http://mediatemple.net/company/legal/general_terms.php#section-i3

--------------Details of the Complaint--------------
The complaint that has been filed against you has been filed by an agent representing the legal interest of Facebook ("Complainant"). The allegedly infringing material was found at or about the following website:

facebooksappeconomy.com (the "Subject Site").

Specifically, but not limited to:

https://www.facebooksappeconomy.com/

At this writing, according to USPTO records, Complainant owns the following federally registered trademark(s) or service mark(s) 3122052, (collectively, the "Facebook Mark"). In the complaint, Complainant alleges that you have infringed on the Facebook Mark by using it on, about, for and/or throughout the Subject Site without authorization. Complainant specifically states that:

------------Begin Quoted Text-----------

We write on behalf of Facebook, Inc. regarding the hosting and use of the domain name facebooksappeconomy.com, which contains the famous Facebook trademark. The registrant has used your services to host (facebooksappeconomy.com)

Unauthorized use of the Facebook mark, such as facebooksappeconomy.com, will inevitably cause confusion as to whether the domain and underlying use are authorized, endorsed, or sponsored by Facebook when, in fact, they are not.

Use of the content is not defensible. We have reached out to the registrant with no response or compliance.
------------End Quoted Text-----------

As Complainant has provided a complaint that substantially complies with our requirements for such infringement notices, and as we have reasonable suspicion to believe that your use of the Facebook Mark has the potential to expose Media Temple to undue legal liability, we respectfully ask that you please remove all instances and/or references to the Facebook Mark from the Subject Site and anywhere else on our systems you may be using it. As a courtesy, we will allow you 24 hours from the time of this notice to do so. If you fail to so act, we will be forced to entirely disable the Subject Site until such time as you fully comply with this request or the (mt) Account is closed.

WARNING: If additional occurrences are reported, we may be forced to close your (mt) Account pursuant to the Terms (see section (J)(1)(e) of the Terms).