DURIE TANGRI LLP
SONAL N. MEHTA (SBN 222086)
smehta@durietangri.com
LAURA E. MILLER (SBN 271713)
lmiller@durietangri.com
CATHERINE Y. KIM (SBN 308442)
ckim@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
Facebook, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SIX4THREE, LLC,<br><br>                                Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC., and MEDIA TEMPLE, INC.,<br><br>                                Defendants. | Case No. 4:16-cv-06716-PJH<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    March 8, 2017<br>Time:    9:00 am<br>Ctrm:    3, 3rd Floor<br>Judge:   Honorable Phyllis J. Hamilton<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................................1

I.      INTRODUCTION ....................................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................................2

        A.      The Parties' State Court Litigation ..........................................................................2

        B.      Facebook Has Never Threatened Enforcement Action Against the Gripe Site and Instead Has Repeatedly Assured Six4Three That It Would Not Do So. ...........................3

III.    THERE IS NO SUBJECT MATTER JURISIDICTION ........................................................8

        A.      There Is No Case Or Controversy .............................................................................8

        B.      Six4Three Has Not Pleaded Adequate Facts To Support Standing. ...........................11

IV.    CONCLUSION .....................................................................................................................13

i

DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 4:16-CV-06716-PJH

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997)................................................................................................................8

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...........................................................................................11

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986)............................................................................................................8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .........................................................................................11

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) .........................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994)............................................................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)............................................................................................................8

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)......................................................................................................11

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)............................................................................................................11

*Swanson v. ALZA Corp.*,
   No. C 12-4579-PJH, 2013 WL 968275, *3 (N.D. Cal. Mar. 12, 2013)...............................8

*Vegas Diamond Properties, LLC v. F.D.I.C.*,
   669 F.3d 933, 936 (9th Cir. 2012) .....................................................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975)..........................................................................................................11

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .........................................................................................11

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................................9

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................... iii, 11

DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 4:16-CV-06716-PJH

1

**NOTICE OF MOTION AND MOTION**

2

**TO THE COURT AND ALL COUNSEL OF RECORD:**

3

PLEASE TAKE NOTICE that on March 8, 2017, at 9 am in Courtroom 3 of the above-referenced

4

court, located at 1301 Clay Street, Oakland, California, Defendant Facebook, Inc. ("Facebook") by their

5

attorneys Durie Tangri LLP, will move and hereby move, pursuant to Rule 12(b)(1) of the Federal Rules

6

of Civil Procedure, for an order dismissing Plaintiff Six4Three, LLC's ("Six4Three") First Amended

7

Complaint for Declaratory Judgment and Injunctive Relief ("Amended Complaint") against Facebook

8

with prejudice.

9

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in

10

support thereof, the Amended Complaint and other pleadings on file in this matter, the arguments of

11

counsel, and all other material which may properly come before the Court at or before the hearing on this

12

Motion.

13

**STATEMENT OF RELIEF SOUGHT BY FACEBOOK**

14

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Facebook seeks dismissal of

15

Six4Three's Amended Complaint with prejudice for lack of subject matter jurisdiction.

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 4:16-CV-06716-PJH

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Court does not have subject matter jurisdiction over Six4Three's claims for declaratory relief.

*First*, there is no controversy here.  Instead, Six4Three has ginned up an excuse to file this lawsuit as part of its express campaign to impose burden and expense on Facebook to gain some perceived leverage in a parallel state court proceeding, and to gain publicity for a website intended to attract potential plaintiffs for Six4Three's counsel to use in bringing additional lawsuits against Facebook.  As explained in detail below, Six4Three's Amended Complaint should be dismissed.

Six4Three's allegation that there is a justiciable controversy rests entirely on its contention that Facebook threatened to take down a "gripe site" that Six4Three and its litigation counsel have set up. The only factual allegation supporting that contention is a November 11, 2016 email from MarkMonitor, Facebook's third-party trademark monitoring service, notifying the registrant of the website www.facebooksappeconomy.com (the "Site") that it was violating Facebook's trademarks on the Site.[1] What Six4Three's Amended Complaint fails to mention is that the "gripe site" described in its Amended Complaint and for which it seeks declaratory relief *is not the same site* that was subject to the November 11, 2016 email.  While the URL may be the same, the website that appears at that URL is not.  The content of the Site changed dramatically between November 11, 2016 and December 15, 2016: on November 11, and indeed, at the time that Six4Three filed this lawsuit, the Site contained only Facebook's trademarked thumb logo and the phrase "facebook's app economy," with "facebook" written in the same typeface and color as Facebook's FACEBOOK mark.  It was not until December 15, 2016 that Six4Three (or its counsel) launched the "Gripe Site" content described in the Amended Complaint. This was more than a month *after* the November 11, 2016 email allegedly threatening the Site.  In fact,

---

[1]    The current version of the website facebooksappeconomy.com went live on December 15, 2016. Where this brief discusses the prior version, it makes clear that it is describing the prior, pre-December 15, 2016 version of the Site, or the "Infringing Site"; where it describes the current version of the Site, it references the current Site, the post-December 15 Site, or the "Gripe Site."  Nothing herein is intended to address unknown, future versions of the Site.  Should there be changes to the Site in the future, Facebook will respond as appropriate.

DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 4:16-CV-06716-PJH

neither Facebook nor its third-party trademark monitoring service (nor any other entity acting for or on behalf of Facebook) has threatened to take action against the Gripe Site in its current incarnation as a "gripe site," and Six4Three has not alleged otherwise.  The Gripe Site is up and running.  And Facebook already has repeatedly assured Six4Three and its counsel that Facebook does not intend to take action against the Gripe Site in its current form, and has even instructed MarkMonitor not to take any action against the Gripe Site.  There is no controversy here and the case should be dismissed in its entirety.

*Second*, even if there were a case and controversy between Facebook and the owner of the Site, Six4Three has not pleaded facts sufficient to establish that it is the Site's owner and has standing to bring the asserted claims.   Given the absence of asserted facts establishing Six4Three's ownership and Facebook's representations that it will not take action against the Gripe Site in its current form, Six4Three has not and cannot allege a likelihood of future injury.

The failure to plead facts sufficient to establish standing appears to be deliberate.  Based on information recently discovered in the parallel state court litigation, Facebook's counsel is informed and believes that Six4Three does not have standing to sue in this case and that the Amended Complaint's limited allegations may be inaccurate.  Because that evidence is subject to a protective order in the state court case and cannot be used in this proceeding, Facebook is filing concurrently herewith a motion for jurisdictional discovery to be conducted immediately should the Court wish to evaluate whether Six4Three's lack of standing is a second, independent basis requiring dismissal of the case.

## II.  STATEMENT OF FACTS

### A.  The Parties' State Court Litigation

On April 10, 2015, Six4Three filed suit against Facebook in San Mateo Superior Court. Declaration of Laura E. Miller In Support Of Defendant Facebook, Inc.'s Motion to Dismiss ("Miller Decl.") ¶ 2.  Six4Three's allegations in the case center on the only product it ever made, an iPhone app called "Pikinis."  Pikinis allowed its users to electronically search through all of their Facebook friends' photos online to identify photos of women in bikinis and save them for later viewing.  *See id.*, Ex. 1 ¶ 9; Ex. 2.

Facebook is an online social media company, and over the years, it has allowed third-party

developers to build applications that interact with Facebook and make those applications available to Facebook users via Facebook's Platform. *See id.*, Ex. 1 ¶¶ 7, 9. In 2010, Facebook announced that it would allow third-party developers to access certain information about Facebook users, and the users' Facebook friends, for their applications. *See id.* ¶¶ 40–43. This policy drew criticism; Facebook received extensive user feedback that users wanted "more control over sharing their personal information with apps." *See id.*, Ex. 3. Users also told Facebook that they were "often surprised when a friend shares their information with an app," that "some apps ask for too many permissions," and that they wanted to be able to "log into apps without sharing their Facebook information at all." *Id.* As a result of this feedback, in 2014, Facebook announced that in one year, on April 30, 2015, it would end third-party developer access to certain types of Facebook user information. *See id.*, Ex. 1 ¶¶ 73-75. One of these categories of data was the photos that a user's friends posted to Facebook, which Pikinis relied on to let its users search through their friends' photos. *See id.* ¶ 82.

When Facebook announced that the permissions for access to certain data belonging to a user's friends would be removed, it advised developers, including Six4Three, that they must upgrade their apps to Version 2.0 of Facebook's Graph API by April 30, 2015. *See, e.g.*, *id.*, Ex. 1 ¶ 82. Instead of modifying Pikinis to work with the updated version of Facebook's API, however, Six4Three sued Facebook in California state court. That litigation is ongoing.

Just last Friday, January 13, 2016, Facebook's counsel took the deposition of Ted Kramer, who was Managing Director of Six4Three and now purports to be the sole member of Six4Three, LLC. Miller Decl. ¶ 6. During that deposition, Facebook's counsel questioned Mr. Kramer under oath about the creation, maintenance, and control of the Site. *Id.* Mr. Kramer's deposition testimony has been designated Highly Confidential under the protective order in the parallel state court case, and by that order's terms, may not be used in this proceeding. *Id.*

### B. Facebook Has Never Threatened Enforcement Action Against the Gripe Site and Instead Has Repeatedly Assured Six4Three That It Would Not Do So.

Every year, thousands of domain names containing Facebook's trademarks are registered by third parties. Declaration of Susan Kawaguchi In Support Of Defendant Facebook, Inc.'s Motion to Dismiss ("Kawaguchi Decl.") ¶ 2. To protect its trademarks, Facebook works with a company, MarkMonitor,

that specializes in monitoring new domain name registrations.  *Id.*  As part of this protection effort, on November 11, 2016, MarkMonitor notified the registrant of the Site that the domain name "facebooksappeconomy.com" contained the famous Facebook trademark.  *Id.* ¶ 3; ECF No. 6 at Ex. A. Rather than directly contacting MarkMonitor or Facebook regarding this email, Six4Three filed its Complaint for Declaratory Judgment ten days later, on November 21, 2016.  ECF No. 1.  Facebook was only made aware that MarkMonitor had contacted the registrant of the Site when Six4Three's counsel provided Facebook's outside counsel with a copy of that Complaint.  Kawaguchi Decl.  ¶ 3.

Six4Three's Complaint alleged that the Site was "an information resource for software developers . . . that have been impacted by Facebook's unfair and deceptive practices," and "a forum for increased public awareness of the harm caused by a lack of regulation in application economies."  ECF No. 1 ¶ 1. These allegations were false.  In fact, directly contrary to the allegations in the Complaint, at the time that the Complaint was filed and all the way up to December 15, 2016, the Infringing Site contained nothing more than a plain blue background with Facebook's FACEBOOK mark (in the same typeface and coloring as Facebook's mark) and Facebook's Thumb logo, both of which are federally registered trademarks owned by Facebook:



Miller Decl., Ex. 4.  There was no other content on the Infringing Site.

Importantly, this is what the Infringing Site looked like on November 11, 2016, when Facebook's

third-party trademark monitoring service sent the registrant of the Site an email notifying it of trademark infringement.  At the time of that notice, the Infringing Site did not have any of the content described in the Complaint and was not a "gripe site." *Id.*

On December 2, 2016, nearly two weeks after Six4Three filed its Complaint with untrue descriptions of the then-existing Infringing Site, Six4Three's counsel sent Facebook's outside counsel an email—"as a courtesy"—containing a new link "to the site described in 643's Complaint for Declaratory Judgment." Miller Decl., Ex. 5.  This was the first time that Facebook had access to the site as it exists today.  *Id.* ¶ 8.  The link provided was a hidden test version of the site that was not viewable by the general public:  www.facebooksappeconomy.com/sadpanda.[2]

Along with the link, Six4Three's counsel made several threats regarding what would happen unless Facebook capitulated in the lawsuit currently pending in San Mateo Superior Court.  *Id.*, Ex. 5.



Because Six4Three's counsel's threats had nothing to do with the merits of the San Mateo Superior Court action, Facebook did not respond to them.  Miller Decl. ¶ 8.  On December 15, 2016, more than three weeks after Six4Three filed its Complaint, Six4Three transformed the Site from the

---

[2]    "Sad Panda" is an internet meme originating from a 1999 episode of the TV show South Park, in which the "Sexual Harassment Panda" explains sexual harassment to a group of third-grade students. *See,  e.g.,*  http://knowyourmeme.com/memes/sad-panda  (last  visited  December  26,  2016); http://www.urbandictionary.com/define.php?term=sad%20panda (last visited December 26, 2016).

Infringing Site shown above to its so-called "gripe site."  *Id.* ¶ 9.  Prior to this date, Facebook had alerted MarkMonitor to cease any further enforcement actions against the Site, and Facebook believed the matter to be resolved.  Kawaguchi Decl. ¶ 4.  Unbeknownst to Facebook, however, on December 2, 2016, MarkMonitor sent an email to the service provider that hosted the Site, Media Temple, stating (accurately) that the domain name "facebooksappeconomy.com" contained the famous Facebook trademark without authorization from Facebook, and requesting that Media Temple suspend the domain. Kawaguchi Decl. ¶ 5.  To be clear, at the time that MarkMonitor sent Media Temple that email, the site www.facebooksappeconomy.com was the Infringing Site shown above and *was **not*** the "gripe site" described in the Complaint or the Amended Complaint, and not the Gripe Site that appears at that address now.  By December 15, 2016, when the Gripe Site actually went live, Facebook already had asked MarkMonitor to cease its efforts to take down the previous site and no enforcement efforts had occurred for almost two weeks.

On December 20, 2016 at 2:40 pm Pacific Time, Six4Three's counsel sent Facebook's counsel an email with the vague allegation "that Facebook and others working in concert with it are actively engaged in efforts to take down the site," but with no details as to the efforts to take down the Site. Miller Decl., Ex. 6 at 2.  Instead, Six4Three's counsel demanded that Facebook "cease and desist all such efforts" by noon Pacific Time the next day, or Six4Three would seek preliminary and temporary relief. *Id.*  Because Facebook was unaware of any such activity, it asked for additional details and expressly informed Six4Three's counsel that Facebook had suspended any activity regarding the site once it was altered from the Infringing Site to the Gripe Site described in the November 21, 2016 Complaint.  *Id.* Facebook also expressly informed Six4Three's counsel that Facebook did not intend to pursue any enforcement action against the Gripe Site at this time.  *Id.*

At approximately 1:36 p.m. on December 21, 2016, Six4Three's counsel for the first time provided Facebook with Media Temple's notice regarding its intent to disable the Site unless the registrant removed Facebook's trademarks.  *Id.*  Prior to this email, Facebook was not aware that Media Temple was the service provider for the Site.  Kawaguchi Decl. ¶ 6.  Facebook promptly informed Six4Three's counsel that it was looking into the matter and would respond shortly.  Miller Decl., Ex. 6. Despite Facebook's assurances that it would work with Six4Three's counsel to resolve any issues and

rather than waiting for the promised response, Six4Three filed its Amended Complaint naming Media Temple as a party.  ECF No. 6.

After conducting an investigation during the afternoon of December 21, 2016, Facebook contacted Media Temple directly for the first time regarding this matter, and requested that they reinstate the Site and cease any other enforcement efforts.  Kawaguchi Decl. ¶ 6.  On December 22, 2016, Media Temple immediately complied with this request, and Facebook confirmed that fact with Six4Three's counsel, and believed the issue to be resolved.  Miller Decl., Ex. 7.  But instead of acknowledging that the issue was in fact resolved, Six4Three's counsel responded by sending Facebook its First Amended Complaint and Motion for a Temporary Restraining Order filed earlier that day, December 22, 2016. Miller Decl., Ex. 7.

In an effort to resolve this matter without taking the Court's time and wasting additional resources on Six4Three's baseless claims, Facebook again provided Six4Three with the foregoing recitation of facts and yet another assurance that it did not intend to initiate any enforcement actions against the current version of the Gripe Site.  *Id.*, Ex. 8.  As Facebook had expressly stated prior to Six4Three's TRO Motion, Facebook specifically reiterated that it "never requested that anyone take down the current incarnation of the facebooksappeconomy.com site . . . and has no intention of pursuing any enforcement action against the site at this time."  *Id.*  Having set forth the reasons why Six4Three's Declaratory Judgment Complaint and TRO Motion were meritless, Facebook asked Six4Three to withdraw its Application for a temporary restraining order and dismiss the First Amended Complaint.  *Id.*  Facebook also told Six4Three that if it insisted on pursuing this matter, Facebook would seek sanctions, including attorneys' fees.

After forcing Facebook and its attorneys to prepare a response to the TRO Motion over the holiday weekend, Six4Three withdrew the TRO Motion the morning of Tuesday, December 27, 2016. *See* ECF No. 16.  Since Six4Three withdrew the TRO Motion, Six4Three's counsel has made additional efforts to publicize the Site to third-party Facebook developers, in parallel with its continued prosecution of this case.  For example, Six4Three's counsel has sent an email encouraging developers to visit the Site and fill out a form asking for information regarding any alleged harm caused by Facebook's actions. Miller Decl., Ex. 10.  In sum, the Site remains live and Six4Three's counsel is actively promoting it to

potential witnesses or future plaintiffs for the California state court action, unburdened by any threat that Facebook will engage in enforcement actions against the Site.

## III.    THERE IS NO SUBJECT MATTER JURISIDICTION

### A.    There Is No Case Or Controversy.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto." *Swanson v. ALZA Corp.*, No. C 12-4579-PJH, 2013 WL 968275, *3 (N.D. Cal. Mar. 12, 2013); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The federal courts can determine only those matters that arise in the context of a genuine "case" or "controversy" within the meaning of Article III. U.S. Const., Art. III, § 2. The party asserting jurisdiction bears the burden of establishing that a cause lies within this limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

To establish an "actual controversy," a plaintiff must allege facts that, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations and quotation marks omitted). The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* Importantly, "[t]o qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (internal citation omitted); *Vegas Diamond Properties, LLC v. F.D.I.C.*, 669 F.3d 933, 936 (9th Cir. 2012).

Here, the Amended Complaint's only allegations with respect to an alleged case and controversy are:

- **Paragraph 4**: "On 11 November 2016, Facebook sent a Notice of Facebook Trademark Infringement to 643, attached hereto as Exhibit A. In its Notice, Facebook claims that 643's registration and use of the Site violates the Lanham Act (15 U.S.C. § 1051 *et seq.*) and infringes and dilutes the famous Facebook trademark. The Notice requests that 643 remove the Site and let its domain

8

registration lapse or Facebook "will have no choice but to pursue all available remedies against [643]". See Exhibit A. On 20 December 2016, Media Temple sent notice that it would suspend the site within 24 hours of the notice based on a formal complaint submitted by Facebook. See Exhibit B."

- **Paragraph 17**: "Upon information and belief, Facebook sent its Notice of Trademark Infringement to 643 with full knowledge of the intended purpose of the Site, a purpose that is evidently both non-commercial in nature and of great importance to the business and legal communities. Facebook knew of this intended purpose because 643 communicated it to Facebook in advance of and during a court-mandated mediation on 8 November 2016. As such, Facebook's Notice was designed to create a "chilling effect" intended to suppress 643's free speech and activities in furtherance of a matter of great importance to the public. The First Amendment to the Constitution of the United States and California's Anti-SLAPP law (Cal. Civ. Proc. Code § 425.16) prohibit conduct intended to create this kind of "chilling effect" around issues of great public importance, particularly when the activities are in connection with a judicial proceeding and an overt campaign to raise awareness among lawmakers and regulators of a great injury to small software businesses founded and operating in the United States. In an effort to prevent 643 from raising awareness of this issue, Facebook has lashed out and accused 643 of trademark infringement and dilution. There exists a justiciable controversy regarding 643's right to make a fair use of the Facebook trademark free of any allegations by Defendant that such conduct constitutes an infringement of any trademark owned by Defendant."

- **Paragraph 19:** "An actual justiciable controversy exists as to whether the Site infringes any trademark owned by the Defendant."

- **Paragraph 22:** "An actual justiciable controversy exists as to whether the Site dilutes any trademark owned by the Defendant."

- **Paragraph 25:** "An actual justiciable controversy exists as to whether Plaintiff's use of any materials to which Defendant holds trademark or copyright is protected by the Fair Use Doctrine."

ECF No. 6. Of these, only Paragraphs 4 and 17 contain factual allegations; Paragraphs 19, 22, and 25 simply contain conclusory allegations that a justiciable controversy exists without any underlying facts.

But Paragraphs 4 and 17—and the rest of the Amended Complaint—fall far short of pleading facts that would establish declaratory judgment jurisdiction. Six4Three's only purported basis for declaratory judgment subject matter against Facebook is the single email sent by MarkMonitor, a trademark monitoring company, on November 11, 2016, alerting Six4Three that the URL "facebooksappeconomy.com" included Facebook's trademark. But that allegation asks this Court to buy

9

into a fiction. Namely, that the Gripe Site that went live on December 15, 2016 was the same website that prompted MarkMonitor's Notice of Trademark Infringement email to the Site's registrant on November 11, 2016. It was not. The website that existed up until December 15, 2016 was nothing more than a plain blue background with Facebook's FACEBOOK mark and Facebook's thumbs up logo. While MarkMonitor did send an email about that *pre*-December 15 site, Six4Three's Amended Complaint does not—nor could it—identify a single act by Facebook to take down the ***post***-December 15 "gripe site." To wit, the November 11, 2016 email was sent more than three weeks before Six4Three even provided Facebook with the "Sad Panda" link, which was the first opportunity Facebook had to review the test version of the Site and more than a month before Six4Three actually publicly launched the Gripe Site.

The complete absence of allegations reflecting a case or controversy with respect to the post-December 15 "gripe site" is not surprising. Facebook has never threatened to initiate any enforcement action against Six4Three's post-December 15 "gripe site." The infringing content that was visible on the Infringing Site no longer exists at www.facebooksappeconomy.com. As a result, once the Gripe Site went live on December 15, 2016, Facebook repeatedly assured Six4Three that it would not engage in any action to take the site, as it currently exists, down. Miller Decl., Exs. 6, 7, 8. When Six4Three notified Facebook that ***Six4Three's own service provider***, Media Temple, had threatened to suspend the site based on a complaint levied against the site prior to December 15, 2016, Facebook immediately contacted Media Temple—with whom it had not previously been in contact—and requested that they reinstate the Gripe Site. Kawaguchi Decl. ¶ 6. Media Temple responded that it would not even discuss the Site with Facebook because of its confidentiality obligations to its "customer," and Facebook has had no further communication with Media Temple. Miller Decl., Ex. 9.

The Site remains live and available to the public. Indeed, Six4Three's counsel is engaged in an active campaign to advertise and otherwise disseminate the Site to other Facebook developers in an effort to canvass potential witnesses (and additional plaintiffs) for the litigation pending in San Mateo Superior Court. Miller Decl., Ex. 10. In short, since the "gripe site" went live on December 15, 2016—and in fact, since Facebook received notice of the test version of that site on December 2, 2016—Facebook has never threatened any enforcement actions against the current version of the Site and has repeatedly

1  assured Six4Three that it does not intend to initiate any such actions.  There is simply no dispute here and

2  therefore no basis for declaratory judgment jurisdiction.  This case should be dismissed.

3        **B.**      **Six4Three Has Not Pleaded Adequate Facts To Support Standing.**

4        Even if the Court were find that there is a case or controversy, the Court should nevertheless

5  dismiss this case for lack of subject matter jurisdiction on the second and independent basis that

6  Six4Three lacks standing.

7        Absent standing, this Court has no subject matter jurisdiction over Six4Three's claims.  *Steel Co.*

8  *v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at

9  all" and "the only function remaining to the court is that of announcing the fact and dismissing the

10  cause."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion challenging a plaintiff's standing

11  is properly brought under Rule 12(b)(1).  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

12  1121 (9th Cir. 2010).

13        Standing addresses whether the plaintiff is the proper party to bring a matter to the Court for

14  adjudication.  *Id.* at 1122.  The plaintiff bears the burden of establishing each element of standing.  *Lujan*

15  *v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Article III standing requires a plaintiff show (1) an

16  injury-in-fact that is "concrete and particularized," as well as "actual or imminent;" (2) that the injury is

17  "fairly traceable to the challenged action of the defendant;" and (3) "that the injury will be redressed by a

18  favorable decision."  *Id* at 560 (internal citations omitted); *see also Spokeo, Inc. v. Robins*, 136 S. Ct.

19  1540, 1547 (2016).  To do so, Plaintiff "must 'clearly allege facts demonstrating' each element." *Id.*

20  (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

21        Here, Six4Three's burden is even higher because its claims are only for declaratory and injunctive

22  relief.  For plaintiffs to have standing to "seek declaratory and injunctive relief, they must demonstrate

23  that they are 'realistically threatened by a *repetition* of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177,

24  1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001)).  Six4Three has

25  not and cannot allege facts sufficient to meet that standard.  While Six4Three's Amended Complaint

26  includes a variety of conclusory allegations as to the supposed controversy between Six4Three and

27  Facebook, Six4Three does not allege actual facts that, if proven, would confer standing on *Six4Three* as

28  a party that has been injured-in-fact and has a likelihood of future injury supporting its claims for

declaratory and injunctive relief.

*First*, Facebook has not threatened to take down the Gripe Site in its current incarnation as a gripe site and has informed Six4Three's counsel that it will not do so. *See supra*. As a result, Six4Three has not and cannot allege facts demonstrating a likelihood that it will suffer a future injury, even if it is in fact the true owner of the Site.

*Second*, Six4Three has not alleged sufficient facts to show that it owns the Site and is the party that would be injured if Site were actually threatened. When first reading the Amended Complaint, one is led to believe the Six4Three controls the Site and is the party that would be injured if the alleged threats to take down the Site had actually been made. It is only upon a further review that a fundamental premise of Six4Three's Amended Complaint reveals itself to be absent: any *factual* allegation that Six4Three controls the Site and is the party that would be injured if the Site were to be threatened. The Amended Complaint's only plausible factual allegations regarding ownership of the Site are the bald averments that "643 created the Site," "manages the domain and the Site," and "has no intention of selling the domain or the Site." ECF No. 6 ¶¶ 9, 12, 14. Aside from those conclusory statements, there are no factual allegations as to the ownership, control, or maintenance of the Site. Facebook's counsel is informed and believes that these allegations may be false or misleading, based on the recent deposition testimony of the individual who purports to be the sole member of Six4Three, LLC. But even if those allegations were true, Six4Three has not even alleged that it controls the Site such that it would have standing to seek prospective relief in the form of declaratory or injunctive relief. In other words, Six4Three has failed to allege facts that would be adequate to establish its standing and this Court's subject matter jurisdiction. Six4Three's Amended Complaint should thus be dismissed for lack of standing.

If, however, the Court finds that Six4Three has sufficiently alleged a likelihood that the true owner of the Site will suffer a future injury, Facebook requests that the Court grant Facebook's companion motion for jurisdictional discovery. That motion seeks limited discovery into the narrow issue of ownership of the Site, and is necessary for Facebook and the Court to ascertain whether Six4Three owns the Site, is the injured party, and has standing to bring this lawsuit. Jurisdictional discovery would allow the Court the opportunity to consider the sworn deposition testimony of the

Six4Three LLC's sole member as to the creation, ownership, and control of the Site that Facebook is currently prevented from sharing with the Court.

## IV.     CONCLUSION

This case should be dismissed for either or both of two independent reasons.  First, no case or controversy existed at the time the Complaint was filed, no case or controversy existed at the time the Amended Complaint was filed, and no case or controversy exists as of the filing of this motion. Second, Six4Three's Amended Complaint does not allege sufficient facts to establish its standing to sue. This Court does not have subject matter jurisdiction.

Dated:  January 17, 2017                          DURIE TANGRI LLP


                                        By:  _____/s/ Laura E. Miller_____
                                                        LAURA E. MILLER

                                             Attorneys for Defendant
                                             Facebook, Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 17, 2017 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Laura E. Miller*
LAURA E. MILLER

DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 4:16-CV-06716-PJH